## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Fort Myers Division

**PAUL GUSTAFSON,**                              CASE NO.:

     *Plaintiff,*

**v.**

**CAPITAL ONE, N.A., SALLIE MAE
BANK, TRANS UNION, LLC,
EXPERIAN INFORMATION
SOLUTIONS, INC. and EQUIFAX
INFORMATION SERVICES, LLC,**

     *Defendants,*

_____/

### PLAINTIFF'S COMPLAINT
### JURY DEMAND

1.    Plaintiff, PAUL GUSTAFSON (hereinafter "Plaintiff" or Mr. Gustafson") brings this action against Defendants CAPITAL ONE, N.A. ("Capital One"), SALLIE MAE BANK ("Sallie Mae"), TRANS UNION, LLC ("Trans Union"), EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq.* (hereinafter "FCRA").

2.    Plaintiff further alleges violation of the Florida Consumer Collection Practices act, Florida Statute §559.72 *et. seq.* (hereinafter "FCCPA") against Capital One and Sallie Mae.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4.     Supplemental jurisdiction exists for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

5.     Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

6.     Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Lee County, Florida.

## **PARTIES**

7.     Plaintiff is a natural person who, at all times relevant to this action is and was a resident of Lee County, Florida and is a "consumer" as defined by 15 U.S.C. § 1681a(c) and Florida Statute §559.55(8).

8.     Defendant Capital One is a Delaware corporation registered to conduct business in the State of Florida with a principal place of business located at 1680 Capital One Drive, McLean, Virginia 22102.

9.     Defendant Capital One is a "debt collector" within the meaning of Florida Statute §559.55(7).

10.     Defendant Sallie Mae is a Utah corporation with a principal place of business located at 175 South West Temple 6th Fl., Salt Lake City, UT 84101.

11.     Defendant Sallie Mae is a "debt collector" within the meaning of Florida Statute §559.55(7).

12.     Capital One and Sallie Mae use instrumentalities of interstate commerce for the purpose of furnishing information on specific trade accounts to

2

the three national consumer reporting agencies, Trans Union, Equifax, and Experian (collectively "credit reporting agencies").

13.    These instrumentalities of interstate commerce are largely electronic, written, or telephonic communications which have effects on consumers and their credit reports within the State of Florida.

14.    Defendant Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the state of Illinois. Trans Union is authorized to do business in and regularly conducts business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

15.    Defendant, Experian is an Ohio corporation incorporated under the laws of the State of Delaware. Experian is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

16.    Defendant, Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware. Equifax is authorized to do business in the State of Florida and engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

### *Long- Arm Jurisdiction*

17.     Florida's long-arm "appl[ies] to defendants committing tortious acts outside the state that cause injury in Florida." *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999). Accordingly, the long-arm statute confers personal jurisdiction over a nonresident defendant who is alleged to have committed a tortious act in Florida, which causes injury to a plaintiff. *Id*. at 1216. "[A] nonresident defendant may commit a tortious act within the state by electronic, written, or telephonic communication into Florida so long as the cause of action arises from such communication." *See Smith v. Trans-Siberian Orchestra,* 728 F. Supp. 2d 1315, 1321 (M.D. Fla. 2010).

18.     The purpose of the FCRA is to safeguard against the improper reporting of information on a credit report either by the credit reporting agency or by the furnisher of credit information. See *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001) (reversing a dismissal for lack of personal jurisdiction on an FCRA claim while stating the "mental distress can only be felt where Plaintiffs' 'sensibilities' reside -that is, Nevada."). Numerous courts have found personal jurisdiction in FCRA cases where the plaintiff resides and was injured by an out-of-state defendant's actions. *See Marcus Forbes v. Concord Advice, LLC et al.*, No. 8:19-cv-02980-VMC-CPT, Dkt. 73 at 16-18 (M.D. Fla. Apr. 21, 2020) (listing cases consistent with personal jurisdiction over nonresident defendants in FCRA cases).

4

19.     Long-Arm jurisdiction exists under the FCRA claims made against Defendants because Mr. Gustafson resides in the area where the effect of the communications was felt.

20.     Additionally, specific jurisdiction exists over Capital One and Sallie Mae under Fla. Stat. 48.193(1)(a)(2) because it committed out-of-state acts, that are codified torts under the FCRA which have caused damage to Plaintiff in Florida.

21.     Personal jurisdiction exists over Capital One and Sallie Mae because Plaintiff lives in the forum where he was injured by its actions. *See Koch v. Lake City Credit, LLC*, 6:19-cv-667-Orl-41GJK, 2019 WL 3719457, at *5 (M.D. Fla. July 23, 2019) (citing *InternetSols. Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010) (nonresidents can commit tortious acts in Florida by virtue of telephonic, electronic, or written communications into Florida)).  "[S]uits may be brought where a debtor receives a communication from a debt collector located elsewhere where the transmittal of those communications is claimed to have violated debt collection laws." *See Alecca v. AMG Managing Ptnrs., LLC*, No. 3:13-cv-163, 2014 WL 2987702, at *6 (M.D. Fla. Jul. 2, 2014) (quoting *Sluys v. Hand*, 831 F. Supp. 321, 324 (S.D.N.Y. 1993).

22.     Accordingly, Defendants have created minimum contacts with this forum by virtue of their telephonic, electronic, or written communications into Florida which violated the FCRA.

## STATUTORY FRAMEWORK

### THE FCRA

23.     The Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.*, was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

24.     Congress found that "[i]nnacurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." *See* 15 U.S.C. §1681(a)(1).

25.     "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

26.     A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. *See* 15 U.S.C. §1681s-2.

27.    "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) to conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016).

28.    Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." *See* 15 U.S.C. § 1681(a)(3),(4).

29.    The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." *See* 15 U.S.C.S. § 1681i(a)(1)(A).

30.    In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C.S. § 1681i(a)(4).

31.     If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall...(i)  promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii)  promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." *See* 15 U.S.C. § 1681(a)(5)(A)(i),(ii).

32.     The FCRA provides a private right of action against any person that violates the provisions of the FCRA. *See* 15 U.S.C. §§ 1681o, 1691n.

33.     If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. *See* 15 U.S.C. § 1681n(a).

34.     Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

  a.     credit or insurance to be used primarily for personal, family, or household purposes;

  b.     employment purposes; or

8

      c.     any other purpose authorized under section 1681b of this title.

*See* 15 U.S.C. § 1681a(d)(1).

35.    The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

### The FCCPA

36.    The FCCPA's goal is to "provide the consumer with the most protection possible." *See LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

37.    The FCCPA provides that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." *See* Fla. Stat. § 559.72(9).

38.    "The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." *See* Fla. Stat. §559.77(2).

39.    As a consumer, Mr. Gustafson has a private right of action against Capital One and Sallie Mae pursuant to Florida Statute §559.77(2), which provides that "[a]ny person who fails to comply with any provision of s. 559.72 is liable for actual damages and for additional statutory damages . . . not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff." (omissions added).

## **FACTUAL ALLEGATIONS**

40.    Mr. Gustafson is a victim of identity theft committed against him by his former girlfriend, Ashleigh Terese Rayl ("Ms. Rayl").

41.    Mr. Gustafson and Ms. Rayl were in a relationship and lived together in Michigan from approximately 2011 through 2018.

42.    In November 2019, Mr. Gustafson permanently moved to Florida.

43.    During the time that Mr. Gustafson resided with Ms. Rayl in Michigan, Ms. Rayl gained access to his personal identifying information including his social security number without his knowledge.

44.    Ms. Rayl then fraudulently added Mr. Gustafson as a joint applicant on two separate student loans with Sallie Mae in or around November 2019 and November 2020.

45.    Ms. Rayl also fraudulently opened a credit card with Capital One in or around July 2021.

46.    Mr. Gustafson was not aware that Ms. Rayl had stolen his personal identifying information and opened the Sallie Mae and Capital One accounts.

47.    In or around March 2023, Mr. Gustafson was prompted to review his credit reports and discovered the fraudulent Sallie Mae and Capital One accounts after he applied for and was denied a credit card with Citibank.

48.    Shortly thereafter, Mr. Gustafson began contacting Capital One and Sallie Mae to inform these Defendants that he was a victim of identity theft and that the accounts at issue were opened fraudulently.

49.     After Mr. Gustafson contacted the Michigan State Police, the Michigan State Police conducted an investigation into Ms. Rayl's crimes against Mr. Gustafson including requesting information from Capital One and Sallie Mae and obtaining a search warrant and searching her home.

50.     In or around June 2024, The Michigan State Police submitted a warrant request to the Michigan State Attorney's Office.

51.     Mr. Gustafson also discovered that Capital One had filed a lawsuit against him in Michigan on or about February 7, 2023 for the outstanding balance of the fraudulent credit card.

52.     Mr. Gustafson contacted Capital One's counsel and informed them that he was a victim of identity theft.

53.     Shortly thereafter, Capital One dismissed the Michigan lawsuit against Mr. Gustafson but continued to report the fraudulent account on his credit reports with Trans Union, Equifax and Experian.

54.     On or about March 14, 2024, Mr. Gustafson mailed written dispute letters to Trans Union, Equifax and Experian with a courtesy copy of each letter also mailed to Sallie Mae and Capital One ("March 2024 dispute").

55.     Upon information and belief, at least Experian forwarded Mr. Gustafson's March 24 dispute to Sallie Mae and Capital One.

56.     In his dispute letters, Mr. Gustafson informed Defendants that he was a victim of identity theft and that the Sallie Mae and Capital One accounts were

opened without his consent. Mr. Gustafson also included a copy of his Federal Trade Commission identity theft reports.

57.    Defendant Trans Union sent Mr. Gustafson correspondence dated March 28, 2024 informing him that it would not investigate his dispute and failed to block the fraudulent information he was disputing in his March 2024 dispute.

58.    Defendant Equifax sent Mr. Gustafson correspondence dated April 3, 2024 informing him that it would not block the fraudulent information he was disputing in his March 2024 dispute. Equifax also failed to investigate the fraudulent information.

59.    Defendant Experian sent Mr. Gustafson investigation results dated April 18, 2024 indicating that it has conducted an investigation into his March 2024 dispute, that it has allegedly verified that the fraudulent Sallie Mae and Capital One accounts were reported accurately and that it intends to continue reporting the fraudulent accounts on his credit reports.

60.    Notwithstanding the above, on or about May 28, 2024, Mr. Gustafson again mailed written dispute letters to Trans Union, Equifax and Experian with a courtesy copy of each letter also mailed to Sallie Mae and Capital One ("May 2024 dispute").

61.    Upon information and belief, at least Trans Union and Experian also forwarded Mr. Gustafson's May 24 dispute to Sallie Mae and Capital One.

62.     Once again, in his May 2024 dispute, Mr. Mr. Gustafson informed Defendants that he was a victim of identity theft and that the Sallie Mae and Capital One accounts were opened without his consent. Mr. Gustafson also included a copy of his Federal Trade Commission identity theft reports.

63.     Defendant Trans Union sent Mr. Gustafson correspondence dated June 6, 2024 indicating its refusal to block the fraudulent information he was disputing in his May 2024 dispute.

64.     Additionally, Defendant Trans Union sent Mr. Gustafson investigation results dated June 26, 2024 indicating that it has conducted an investigation into his May 2024 dispute, that it has allegedly verified that the fraudulent Sallie Mae and Capital One accounts were reported accurately and that it intends to continue reporting the fraudulent accounts on his credit reports.

65.     Defendant Equifax sent Mr. Gustafson correspondence dated June 26, 2024 informing him that it would not block the fraudulent information he was disputing in his May 2024 dispute. Equifax also failed to investigate the fraudulent information.

66.     Defendant Experian sent Mr. Gustafson correspondence dated June 6, 2024 indicating its refusal to block the fraudulent information he was disputing in his May 2024 dispute.

67.    Additionally, Defendant Experian sent Mr. Gustafson investigation results dated June 26, 2024 indicating that it has conducted an investigation into his May 2024 dispute, that it has allegedly verified that the fraudulent Sallie Mae and Capital One accounts were reported accurately and that it intends to continue reporting the fraudulent accounts on his credit reports.

68.    Defendants' derogatory and inaccurate reporting of the Sallie Mae and Capital One accounts on Plaintiff's credit reports negatively reflects upon Mr. Gustafson's financial obligations, credit score and credit worthiness to existing and potential creditors.

69.    On or about May 23, 2024, Mr. Gustafson's credit card application was denied with JPMorgan Chase Bank based on information in his Experian credit report which included the fraudulent Sallie Mae and Capital One accounts.

70.    On or about June 15, 2024, American Express decreased Mr. Gustafson's credit limit on his EveryDay Card from $10,000 to $5,000 based on information in his Experian credit report which included the fraudulent Sallie Mae and Capital One accounts.

71.    On or about June 29, 2024, Mr. Gustafson's prequalification request for an auto loan was denied with Bank of America based on information in his Experian credit report which included the fraudulent Sallie Mae and Capital One accounts.

72.    Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of

standing under Article III. *See Pedro v. Equifax, Inc.,* 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); *See Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); *See Santangelo v. Comcast Corp.*, 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); *See Binns v. Ocwen Loan Servicing, LLC*, No. 14- 01764, 2015 U.S. Dist. LEXIS 132743, 2015 WL 5785693, at *9 (S.D. Ind. Sept. 30, 2015) ("injuries to plaintiffs' credit scores and reputations were considered intangible harms"); *See Rothman v. U.S. Bank Nat'l Ass'n*, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); *See Green v. RentGrow, Inc.*, No. 2:16cv421, 2016 U.S. Dist. LEXIS 166229 ("A decrease in credit score may still establish an injury in fact sufficient to confer standing"); *See Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, *See Coulbertson v. Experian Info. Sols., Inc.*, No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At

a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

## COUNT I – VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST CAPITAL ONE

73.     Plaintiff incorporates by reference paragraph 2-6, 8-9, 12-13, 17 – 22, 36 – 39, 40 – 43 and 45 – 71 as if fully stated herein.

74.     At all relevant times to this action, Capital One is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

75.     Capital One violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate or asserting the existence of some other legal right when Defendant knew that right did not exist.

76.     Specifically, Capital One continues to report the fraudulent credit card account on Plaintiff's credit report after being placed on notice in early 2023 that the account is fraudulent, and Plaintiff is not responsible for the account.

77.     "Any person who fails to comply with any provision of   §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the

non-compliance, and the extent to which the noncompliance was intentional." See Fla. Stat. §559.77(2) (emphasis added).

78.   As a result of Defendant's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing Defendant's erroneous credit reporting.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Capital One in the form of actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys' fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT II – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST CAPITAL ONE

79.   Plaintiff incorporates by reference paragraphs 1-6, 8, 12-13, 17 – 35, 40 – 43 and 45 - 71 as if fully stated herein.

80.   Capital One is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

81.   Capital One violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's March 2024 Dispute and May 2024 Dispute when it failed to review all relevant information provided by the credit reporting agencies.

82.   As a result of Capital One's violations of the FCRA, Plaintiff has been damaged.

83.     Plaintiff's damages include damages for mental and emotional distress associated with the Capital One account remaining on his credit report(s) following his disputes, credit denials, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

84.     Capital One negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

85.     Additionally, Capital One committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

86.     Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Capital One in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT III – VIOLATIONS OF FLA. STAT. §559.72(9) AGAINST SALLIE MAE

87.     Plaintiff incorporates by reference paragraphs 2-6, 10-13, 17 – 22, 36 – 44, 46 – 50 and 54 - 71 as if fully stated herein.

88.     At all relevant times to this action, Sallie Mae is subject to and must abide by the laws of Florida, including Fla. Stat. §559.72.

89.   Sallie Mae violated Florida Statute § 559.72(9) by claiming, attempting, or threatening to enforce a debt when Defendant knew that the debt was not legitimate or asserting the existence of some other legal right when Defendant knew that right did not exist.

90.   Specifically, Sallie Mae continues to report the fraudulent credit card account on Plaintiff's credit report after being placed on notice in early 2023 that the account is fraudulent, and Plaintiff is not responsible for the account.

91.   "Any person who fails to comply with any provision of  §559.72 is liable for actual damages and for additional statutory damages as the court may allow, but not exceeding $1,000, together with court costs and reasonable attorney's fees incurred by the plaintiff. In determining the defendant's liability for any additional statutory damages, the court shall consider the nature of the defendant's noncompliance with §559.72, the frequency and persistence of the non-compliance, and the extent to which the noncompliance was intentional." Fla. Stat. §559.77(2) (emphasis added).

92.   As a result of Defendant's violations, Plaintiff suffered damages including but not limited to emotional distress and time spent addressing Defendant's erroneous credit reporting.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Sallie Mae in the form on actual damages, statutory damages, and punitive damages pursuant to Fla. Stat. §559.77; attorneys'

fees, litigation expenses and costs of the instant suit; and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IV – VIOLATIONS OF 15 U.S.C. §1681s-2(b) AGAINST SALLIE MAE

93.     Plaintiff incorporates by reference paragraphs 1, 3-6, 10, 17 – 35, 40 – 44, 46 – 50 and 54 - 71 as if fully stated herein.

94.     Sallie Mae is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

95.     Sallie Mae violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's March 2024 Dispute and May 2024 Dispute when it failed to review all relevant information provided by the credit reporting agencies.

96.     As a result of Sallie Mae's violations of the FCRA, Plaintiff has been damaged.

97.     Plaintiff's damages include damages for mental and emotional distress associated with the Sallie Mae accounts remaining on his credit report(s) following his disputes, credit denials, loss of credit and the opportunity to benefit from credit, time spent dealing with credit report disputes, and the costs associated with disputes.

98.     Sallie Mae negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

99.     Additionally, Sallie Mae committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

100.    Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Sallie Mae in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT V – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST TRANS UNION

101.    Plaintiff incorporates by reference paragraph 1, 3, 5, 6, 14, 17-19, 22-35, 40 – 54, 56 – 57, 60 – 64 and 68 as if fully stated herein.

102.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

103.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

104.    During the relevant timeframe, Trans Union received Plaintiff's March 2024 Dispute and May 2024 Dispute which requested a block of the Capital One and Sallie Mae accounts.

105.    Plaintiff disputed the Capital One and Sallie Mae accounts on his Trans Union credit report, identified himself, advised Trans Union of the accounts being opened fraudulently, furnished Trans Union with a copy of the Federal Trade

Commission identity theft report, and requested that Trans Union block the fraudulent information.

106.   In response to his dispute, Trans Union continued to report the tradelines.

107.   Rather than block the fraudulent information, Trans Union negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

108.   Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

109.   Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

110.   As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages,

punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VI - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST TRANS UNION

111.    Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 14, 17-19, 22-35, 40 – 54, 56 – 57, 60 – 64 and 68  as if fully stated herein.

112.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

113.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

114.    During the relevant time frame, Trans Union received Plaintiff's March 2024 Dispute and May 2024 Dispute which requested that the fraudulent Capital One and Sallie Mae accounts be removed from his credit file.

115.    Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

116.    Additionally, Trans Union unreasonably relied on information provided by Capital One and Sallie Mae, when readily verifiable information was provided by Plaintiff in the disputes placing Trans Union on notice that Capital One and Sallie Mae's credit information was inaccurate and unreliable.

117.    Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

118.    Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

119.    As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT VII - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST TRANS UNION

120.    Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 14, 17-19, 22-35, 40 – 54, 56 – 57, 60 – 64 and 68 as if fully stated herein.

121.    At all times relevant hereto, Trans Union is and was a "consumer reporting agency" as provided for under the FCRA.

122.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

123.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

124.   After Plaintiff's March 2024 Dispute and May 2024 Dispute, Trans Union was placed on notice that the Capital One and Sallie Mae accounts are fraudulent, yet Trans Union continues to include the fraudulent accounts in Plaintiff's credit file.

125.   Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

126.   In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

127.   As a result of Trans Union's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages,

punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

### COUNT VIII – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST EQUIFAX

128.    Plaintiff incorporates by reference paragraph 1, 3, 5, 6, 16 – 19, 22-35, 40 – 54, 56, 58, 60, 62, 65 and 68 as if fully stated herein.

129.    At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

130.    At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

131.    During the relevant timeframe, Equifax received Plaintiff's March 2024 Dispute and May 2024 Dispute which requested a block of the Capital One and Sallie Mae accounts.

132.    Plaintiff disputed the Capital One and Sallie Mae accounts on his Equifax credit report, identified himself, advised Equifax of the accounts being opened fraudulently, furnished Equifax with a copy of the Federal Trade Commission identity theft report, and requested that Equifax block the fraudulent information.

133.    In response to his dispute, Equifax continued to report the tradelines and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

26

134.   Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

135.   Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

136.   As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT IX - VIOLATIONS OF 15 U.S.C. §1681i AGAINST EQUIFAX

137.   Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 16 – 19, 22-35, 40 – 54, 56, 58, 60, 62, 65 and 68 as if fully stated herein.

138.   At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

139.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

140.   During the relevant time frame, Equifax received Plaintiff's March 2024 Dispute and May 2024 Dispute which requested that the fraudulent Capital One and Sallie Mae accounts be removed from his credit file.

141.   Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

142.   Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

143.   Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

144.   As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by

law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT X - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EQUIFAX

145.   Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 16 – 19, 22-35, 40 – 54, 56, 58, 60, 62, 65 and 68 as if fully stated herein.

146.   At all times relevant hereto, Equifax is and was a "consumer reporting agency" as provided for under the FCRA.

147.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

148.   Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

149.   After Plaintiff's March 2024 Dispute and May 2024 Dispute, Equifax was placed on notice that the Capital One and Sallie Mae accounts are fraudulent, yet Equifax continues to include the fraudulent accounts in Plaintiff's credit file.

150.   Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

151.   In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

152.   As a result of Equifax's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XI – VIOLATIONS OF 15 U.S.C. 1681c-2 AGAINST EXPERIAN

153.   Plaintiff incorporates by reference paragraph 1, 3, 5, 6, 15, 17 – 19, 22 – 35, 40 – 56, 59 – 62 and 66 – 71 as if fully stated herein.

154.   At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

155.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

156.   During the relevant timeframe, Experian received Plaintiff's March 2024 Dispute and May 2024 Dispute which requested a block of the Capital One and Sallie Mae accounts.

157.   Plaintiff disputed the Capital One and Sallie Mae accounts on his Experian credit report, identified himself, advised Experian of the accounts being

opened fraudulently, furnished Experian with a copy of the Federal Trade Commission identity theft report, and requested that Experian block the fraudulent information.

158.   In response to his disputes, Experian continued to report the tradelines.

159.   Rather than block the fraudulent information, Experian negligently and willfully disregarded its obligations under the FCRA by merely seeking verification of the disputed account from the furnisher of that credit information and refusing to follow the FCRA requirements to block the reporting of fraudulent information in credit reports after it was presented with an identity theft report, in violation of section 1681c-2.

160.   Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

161.   Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

162.   As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XII - VIOLATIONS OF 15 U.S.C. §1681i
## AGAINST EXPERIAN

163.   Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 15, 17 – 19, 22 – 35, 40 – 56, 59 – 62 and 66 – 71 as if fully stated herein.

164.   At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

165.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

166.   During the relevant time frame, Experian received Plaintiff's March 2024 Dispute and May 2024 Dispute which requested that the fraudulent Capital One and Sallie Mae accounts be removed from his credit file.

167.   Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

168.   Additionally, Experian unreasonably relied on information provided by Capital One and Sallie Mae, when readily verifiable information was provided

by Plaintiff in the disputes placing Experian on notice that Capital One and Sallie Mae's credit information was inaccurate and unreliable.

169.   Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

170.   Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

171.   As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## COUNT XIII - VIOLATIONS OF 15 U.S.C. §1681e(b) AGAINST EXPERIAN

172.   Plaintiff incorporates by reference paragraphs 1, 3, 5, 6, 15, 17 – 19, 22 – 35, 40 – 56, 59 – 62 and 66 – 71 as if fully stated herein.

173.   At all times relevant hereto, Experian is and was a "consumer reporting agency" as provided for under the FCRA.

174.   At all times relevant hereto, Plaintiff was a "consumer" as provided for under the FCRA.

175.   Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

176.   After Plaintiff's March 2024 Dispute and May 2024 Dispute, Experian was placed on notice that the Capital One and Sallie Mae accounts are fraudulent, yet Trans Union continues to include the fraudulent accounts in Plaintiff's credit file.

177.   Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

178.   In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

179.   As a result of Experian's FCRA violations, Plaintiff suffered mental and emotional distress associated with fraudulent information in his credit file, damage to his reputation for credit worthiness, credit denials, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, and expenses associated with credit report disputes.

WHEREFORE, Plaintiff, prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

## JURY DEMAND

180.    Plaintiff demands a trial by jury on all issues so triable.


Dated: August 9, 2024                    *Respectfully submitted,*

**SHARMIN & SHARMIN, P.A.**

*/s/ Eiman Sharmin*
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 716391
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
*Attorneys for Plaintiff*